**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| FOREMOST INSURANCE COMPANY, a Michigan corporation, | 2:04-CV-174-BES-GWF |
| Plaintiff, | **ORDER** |
| v. | |
| WILLIS BOWDEN, an individual; GLINDA BOWDEN, an individual; and MERSCORP, INC. (fka MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.), a Delaware corporation; | |
| Defendants. | |

Currently before this Court is Plaintiff Foremost Insurance Company's ("Foremost") Motion for Summary Judgment (Doc. #38), which was filed on May 3, 2005. Defendant Merscorp, Inc. ("Merscorp") filed an Opposition (Doc. #45) on June 10, 2005. Foremost filed its Reply (Doc. #46) on June 30, 2005.

Defendants Willis Bowden and Glinda Bowden (collectively referred to as "Bowdens") did not file an opposition to Foremost's Motion for Summary Judgment, but did file a Motion for Partial Summary Judgment (Doc. #39) on May 3, 2005. Foremost filed an Opposition to the Bowden's Motion for Partial Summary Judgment (Doc. #40) on May 3, 2005. The Bowdens did not file a Reply.

///

**I. BACKGROUND**

This action arises out of the denial an insurance claim made by the Bowdens to Foremost after one of the Bowdens' properties was destroyed by fire on July 5, 2003. Foremost denied the claim on the grounds that when the Bowdens purchased a fire loss insurance policy from Foremost, Willis Bowden misrepresented the use status of the insured premises.

On December 30, 2002, the Bowdens entered into a contract with Foremost for homeowners insurance for a piece of real property that at the time of purchase, was being used as a group home or adult care facility (said property hereinafter referred to as the "Subject Property"). The Bowdens admit that the Subject Property was to continue to run as a group home for a trial period of time so the Bowdens could decide whether to get into the group home care business. The Bowdens admit that they were still in this trial period when the fire occurred.

However, in the insurance application, Willis Bowden answered that the Subject Property would not be used as a rooming house and would not have more than two boarders. The application specifically states that three or more boarders is unacceptable. Willis Bowden also answered that a business would not be conducted on the premises. Foremost Underwriting Guidelines limited occupancy of the Subject Property to a four-member family and no more than two non-insured persons rooming on the premises.

The application was completed verbally and Willis Bowden did not physically fill in the form with answers. However, Willis Bowden signed the original application after the information was placed on the form. Since then, Willis Bowden has claimed that he did not cause the subject checkmarks to be affixed in the application and he did not recall seeing the checkmarks at the time he signed the application. However, it is undisputed that Willis Bowden signed the application and that the application specifically states that all the information in the application is true and complete to the best of Willis Bowden's knowledge and belief.

///

On July 5, 2003, the Subject Property caught fire after a firework being discharged across the street landed on its roof. During Foremost's field investigation, it was discovered that the Subject Property was not being used as a residential property, but instead was being used as an adult care facility. The investigator confirmed through the State of Nevada Division of Health that the Bowdens were running an unlicensed adult assisted living home and that under the prior owner's license, the home was licensed for approximately 10 beds. The investigator also learned that there were at least three adults living at the Subject Property who were not related to the Bowdens.

On January 24, 2004, Foremost determined that the representations in the application were false and material and recommended rescission of the contract. On February 13, 2004, Foremost filed a Complaint, seeking declaratory relief and rescission.

## II. ANALYSIS

Federal Rule of Civil Procedure 56 provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). Summary judgment is "not warranted if a material issue of fact exists for trial." Ribitzki v. Canmar Reading & Bates, 111 F.3d 658, 661–62 (9th Cir. 1997). A material fact is one that "might affect the outcome of the suit under the governing law . . . ." Lindahl v. Air France, 930 F.2d 1434, 1436 (9th Cir. 1991) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986)). Further, any dispute regarding a material issue of fact must be genuine — the evidence must be such that "a reasonable jury could return a verdict for the nonmoving party." Id. Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial" and summary judgment is proper. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The burden of proving the absence of a genuine issue of material fact lies with the moving party. Accordingly, "[t]he evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be

1  drawn in the light most favorable to the nonmoving party." Id. (citing Liberty Lobby, 477 U.S.
2  at 255); Martinez v. City of Los Angeles, 141 F.3d 1373, 1378 (9th Cir. 1998). Nevertheless,
3  if the moving party presents evidence that would call for judgment as a matter of law, then the
4  opposing party must show by specific facts the existence of a genuine issue for trial. Liberty
5  Lobby, 477 U.S. at 250; FED. R. CIV. P. 56(e). To demonstrate a genuine issue of material
6  fact, the nonmoving party "must do more than simply show there is some metaphysical doubt
7  as to the material facts." Matsushita Elec. Indus., 475 U.S. at 586. " If the evidence [proffered
8  by the nonmoving party] is merely colorable, or is not significantly probative, summary
9  judgment may be granted." Liberty Lobby, 477 U.S. at 249–50.

10  When the parties file countermotions for summary judgment, as in this case, the court
11  must consider each party's motion separately to determine whether any genuine issue of
12  material fact exists and that party is entitled to a judgment under Rule 56. Western Land
13  Exchange Project v. U.S. Bureau of Land Mgmt., 315 F. Supp.2d 1068, 1075 (D. Nev. 2004).
14  Countermotions for summary judgment do not necessarily mean that there are no disputed
15  issues of material fact, and do not necessarily permit the judge to render judgment in favor of
16  one side or the other. Starsky v. Williams, 512 F.2d 109, 112 (9th Cir.1975). In making these
17  determinations, the court must evaluate the evidence offered in support of each cross-motion.
18  Id. (citing Fair Housing Council of Riverside County, Inc. v. Riverside Two, 249 F.3d 1132,
19  1136-37 (9th Cir. 2001)). Applying these principles, the Court now turns to whether summary
20  judgment is warranted in this case.

21  Foremost claims it is entitled to summary judgment on the rescission claim on three
22  alternative grounds: (1) actual fraud; (2) materiality; and (3) equitable rescission. Foremost
23  claims that the undisputed facts warrant the rescission of the contract as to the Bowdens as
24  well as Merscorp with its mortgagee interest. Merscorp opposed Foremost's Motion on the
25  grounds that summary judgment is not warranted because there is a triable issue of material
26  fact as to whether or not: (1) any such misrepresentation was made in connection with the
27  acquisition of the insurance policy; and (2) Foremost waived its statutory right to rescind
28

4

because it knew or should have known that the Subject Property would be used as a group home.

In their Motion for Partial Summary Judgment, the Bowdens argue that the exclusion coverage exempts Glinda Bowden as an innocent insured and therefore, the policy cannot be rescinded as to her. Defendants also claim that Foremost had a duty to perform due diligence before issuing its policy and as Foremost failed to conduct due diligence, it is precluded from seeking equitable rescission.

***A. Rescission as to Willis Bowden.***

In a diversity case, substantive summary judgment issues are determined by state law. Bank of Cal. v. Opie, 663 F.2d 977, 980 (9th Cir. 1981). Foremost claims it is entitled to summary judgment because Nevada statutory law permits an insurer to rescind a policy when the applicant makes misrepresentations in an insurance application. NRS 687B.110 provides that an insurer may rescind a policy if any of three conditions are met and states in relevant part:

> Misrepresentations, omissions, concealment of facts and incorrect statements shall not prevent a recovery under the policy or contract unless either:
> 1. Fraudulent; or
> 2. Material either to the acceptance of the risk, or to the hazard assumed by the insurer; or
> 3. The insurer in good faith would either not have issued the policy or contract, or would not have issued it at the same premium rate, or would not have issued a policy or contract in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise.

The terms of the statute indicate that not all three requirements need to be met in order for rescission to occur. In this instance, NRS 687B.110(2) and (3) apply and defeat recovery by the Defendants.

The application that Willis Bowden signed asked questions requiring disclosure of the intended use of the Subject Property. Willis Bowden did not disclose that the Subject Property was to be used as a group home or that a business was being conducted on the property.

5

While the Bowdens admit that they were not sure the Subject Property would continue as a group home, at the time the application was signed, it was in fact, still operating as a group home. In fact, the Subject Property was still being used as a group home over seven months later when the fire occurred. Foremost has stated that had it known that the Subject Property was used as a group home, it would not have issued the policy to the Bowdens. The use of the Subject Property as a business or as a boarding house was material to the acceptance of the risk and the failure to disclose this information precludes recovery under NRS 687B.110(2). Additionally, the omission of this information resulted in Foremost issuing the policy of insurance, which precludes recovery under NRS 687B.110(3). Either provision is sufficient to preclude recovery and as such, Foremost is permitted to rescind the insurance contract as to Willis Bowden.

Merscorp argues that there is a disputed as to whether or not there was any misrepresentation made by Willis Bowden in connection with the application because Willis Bowden denies making any representations to the agent and claims that someone else must have given the agent the incorrect information. However, even if Willis Bowden did not supply the information, under the language of the application, he is responsible for its accuracy. The signature page of the application contains a statement containing the following language:

> By signing this application, I understand and consent to the following items:...(3) I declare that all information on this application is true and complete to the best of my knowledge and belief. I understand that the Company will rely on this information in determining my eligibility for coverage and rating my policy. If any information is incorrect, incomplete or changes, I understand that the corrected, completed or changed information will be used to determine my eligibility and rate.

When Willis Bowden signed the application, he acknowledged that the information in the application was true and that the Company was relying on the information in determining eligibility for coverage. As a simple matter of textbook contract law, Willis Bowden agreed to

///

///

///

6

be bound by the terms of the application when he signed it. Old Republic Ins. Co. v. Jensen, 276 F.Supp.2d 1097, 1101-1102 (D.Nev. 2003). By signing the application, he was in fact, consenting to the truth of information contained therein. Hence, there is no disputed facts with respect to Willis Bowden's actions in connection with the application.

### B.     Rescission as to Glinda Bowden and Merscorp.

Defendants argue that Foremost is not entitled to rescission with respect to Glinda Bowden and Merscorp because an exclusion in the insurance policy expressly protects innocent insureds who did not know or suspect the misrepresentation would occur and who did not participate in or contribute to the misrepresentation. However, these provisions of the insurance policy cannot assist Glinda Bowden or Merscorp if the policy is void from the very beginning, which is precisely the case here.

NRS § 687B.110 permits an insurer to void a policy when the application contains an incorrect statement that was material to the insurer's acceptance of the risk, issuance of the policy, or to the terms of the policy issued. Randono v. CUNA Mutual Insurance Group, 106 Nev. 371, 373, 793 P.2d 1324 (1990). Rescission of an insurance policy effectively renders the policy totally unenforceable from the outset so that there was never any coverage and therefore, no benefits are payable. Imperial Casualty & Indemnity Co. v. Sogomonian, 243 Cal.Rptr. 639 (Cal.App.2.Dist. 1988); *see also*, Bird v. Penn Central Company, 341 F.Supp. 291, 294 (1972) ("material misrepresentations made in an application for an insurance policy renders the policy void *ab initio*"); Eastern District Piece Dye Works, Inc. v. Travelers Ins. Co.*,* 234 N.Y. 441, 138 N.E. 401 (1923); Process Plants Corp. v. Beneficial National Life Ins. Co.*,* 53 A.D.2d 214, 385 N.Y.S.2d 308, *aff'd.,* 42 N.Y.2d 928, 397 N.Y.S.2d 1007, 366 N.E.2d 1361 (1977); Shapiro v. American Home Assur. Co. , 584 F.Supp. 1245, 1251 (D.C.Mass.,1984)*;* McKinney's Insurance Law § 3105(b).

While this result may seem unfair to these two defendants who find themselves without insurance coverage through apparently no fault of their own, a contrary decision would have resulted in similar hardship to Foremost, which would find itself supplying coverage to a risk

it never meant to insure. As succinctly explained in Bird, supra, "(w)hile we sympathize with (the innocent insureds') position, and recognize that (they) are likely to suffer if the entire policy is voidable because of one man's fraudulent response, it must be recognized that plaintiff insurers are likewise innocent parties." Bird, 341 F.Supp. at 294; *see also*, Shapiro, 584 F.Supp. at 1251 (".....relieving the insurer of liability only for the acts of the single director who makes the misrepresentation may save the insurer nothing, since all directors are likely to be jointly and severally liable for the wrongdoing committed by any one").

*C.    Defendants' Imposition of Due Diligence Upon Foremost.*

Defendants also claim that in order to satisfy NRS 687B.110, Foremost had an obligation to conduct some due diligence besides merely having a proposed insured fill out an application. Neither NRS 687B.110 nor the Nevada case law cited by Defendants support this claim.

Defendants cite Violin v. Fireman's Fund Insurance Company, 81 Nev. 456, 406 P.2d 287 (1965), for the proposition that the insurer has a duty to investigate whether the insured fraudulently misrepresented a material fact on the insurance application. However, the Violin case can be distinguished. In the Violin case, the Nevada Supreme Court specifically stated that the holding in the case was limited to the particular facts of the case. The facts of the Violin case are sufficiently different from this case as the insurer in Violin was held to have actual knowledge of the insured's misrepresentation that no company had ever refused or cancelled insurance with the insured, because four years earlier, this insurer had cancelled a policy with the insured. Hence, the Court in Violin held that the insurer could not rescind the insurance contract. Those facts are not present in this case.

Furthermore and contrary to the Bowden's assertions, the plain language of NRS 687B.110 does not impose upon an insurer the duty to perform some amount of due diligence in order to satisfy what Defendants classify as the good faith requirement of the statute.

Finally, any claims that Foremost is estopped from relying on NRS 687B.110(3) because it failed to investigate or inspect the Subject Property must necessarily fail. NRS

687B.110 provides an independent ground for Foremost to deny coverage. This ground is not triggered by any alleged negligence of the agent or the insurance company in failing to inspect the Subject Property, but rather by the omissions and misrepresentations in the application that Willis Bowden signed and ratified. As the duty to inspect or conduct due diligence is not required, whether there is a disputed fact on the issue of inspection or due diligence is irrelevant.

### III. CONCLUSION

For the above-stated reasons, Plaintiff's Motion for Summary Judgment (#38) is GRANTED. Bowden's Motion for Partial Summary Judgment (#39) is DENIED.

DATED: This 11TH day of July, 2006.

_____
BRIAN SANDOVAL
United States District Judge